**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

DENNIS BEHR, et al.

       Plaintiffs,

vs.

AADG, INC., d/b/a Curries,

       Defendant.

No. 14-CV-3075-CJW

**MEMORANDUM OPINION
AND ORDER**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* ................................................................................ 2

*II.  PROCEDURAL HISTORY* ............................................................... 2

*III.  FACTUAL BACKGROUND* ............................................................ 3

*IV.  SUMMARY JUDGMENT STANDARD* ........................................... 6

*V.  STATUTORY INTERPRETATION OF OWBPA* ............................. 7

*VI.  DISCUSSION* .............................................................................. 14

  *A. No Genuine Issue of Any Material Fact Exists* ......................... 15

  *B. Compliance with the Requirement for a 45-day Consideration Period* ........... 16

  *C.  Compliance with the Disclosure Requirement for Non-terminated Employees* 20

  *D. Compliance with the Disclosure Requirement for the Eligibility Factors* ....... 27

  *E.  Compliance with the Disclosure Requirement for the Decisional Unit* .......... 31

  *F.  Inclusion of an Attorney's Fees Provision in the Separation Agreement* ....... 33

*VI.  CONCLUSION* ............................................................................. 35

# I.  INTRODUCTION

The matters before the court are the plaintiffs' motion for partial summary judgment (Doc. 31)[1] and defendant AADG, Inc.'s cross-motion for summary judgment (Doc. 40).  At issue is the enforceability of a separation agreement wherein plaintiffs waived their right to sue their employer for age discrimination.  On April 6, 2016, the court held a hearing on the parties' pending motions for summary judgment.  The parties were given 14 days from the date of the hearing to file additional briefing if they wished.  On April 20, 2016, both parties submitted post-hearing briefs which the court has considered.  Doc. 73, 74.  Thus, the motion for summary judgment is fully submitted.

The court has thoroughly considered all briefing and arguments in this matter.  After much deliberation and research into this difficult statutory landscape, the court finds that, as a matter of law, defendant's waiver is invalid and unenforceable.  Thus, the court grants plaintiffs' motion for partial summary judgment and denies defendant's cross-motion for summary judgment.  Plaintiffs may continue to assert their age discrimination claims against defendant.

# II.  PROCEDURAL HISTORY

Plaintiff Dennis Behr commenced this lawsuit on November 21, 2014.  Mr. Behr filed a complaint with jury demand alleging a violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, by his former employer, defendant AADG, Inc., d/b/a Curries (defendant).  Doc. 2.  Mr. Behr moved for conditional class certification seeking to certify the class of 13 employees—who were over 40 years of age—fired through defendant's reduction in force (RIF) plan.  Doc. 15.  Through an amended complaint, plaintiff Glenn Willier was added as a party plaintiff to

---

[1] The court's references are to the CM/ECF document and page numbers.

the suit. Doc. 25. The court granted conditional class certification. Doc. 28. Potential class members include: Dale Glenn and Robert Lauen (Doc. 37), Michael Eppens (Doc. 41), and Curtis Blaine Darnell (Doc. 43) (hereinafter collectively referred to as "plaintiffs"). Defendant filed a counterclaim for compensation and attorney's fees under the Separation Agreement.[2] Doc. 5.

On November 20, 2015, plaintiffs filed a motion for partial summary judgment and a request for oral argument. Doc. 31. Plaintiffs seek partial summary judgment on the invalidity of ADEA claim waivers in a "Separation Agreement, General Release and Covenant Not to Sue" (Separation Agreement) they signed upon termination of their employment. In response to plaintiffs' motion for partial summary judgment, defendant filed a resistance (Doc. 38), and a cross-motion for summary judgment asserting the waiver is enforceable (Doc. 40). Plaintiffs then filed a resistance to defendant's cross-motion for summary judgment and requested oral argument. Doc. 50. Defendant filed a reply in support of its cross-motion. Doc. 65.

### III. FACTUAL BACKGROUND

Defendant manufactures metal frames and doors as well as composite, commercial, and steel doors, at a plant located in Mason City, Iowa (the plant). Doc. 31-1, at 2; 38-2, at 1. As of February 17, 2014, approximately 600 employees worked at the plant. Doc. 38-2, at 2. At the plant, employees were generally divided between direct and indirect labor groups. *See* Doc. 42-1 at 2. The direct labor group (sometimes referred to as "Direct Production" employees) included employees involved in the actual production of finished products on the manufacturing floor who added value to the

---

[2] Defendant has since withdrawn its claim for attorney's fees.

product in the manufacturing process. *Id.* The indirect labor group included employees in management, services, and support work. *Id.*

Both the President and the Director of Operations were informed in February of 2014 that they needed to cut $1.4 million in indirect personnel costs at the plant. Doc. 38-1, at 3. Defendant therefore conducted a "Reduction in Workforce" or "RIF." *Id.* at 2. All employees working in direct production were ineligible for the RIF program in February 2014. Doc. 38-1, at 3–4. In other words, only employees in the indirect labor group were eligible for the RIF. *Id.* The director of human resources obtained a list of all employees at the plant, removed those with "DP," or Direction Production designations by their names, and thereby created a list of indirect labor group employees. Doc. 42-1, at 2; P. App. 25–28. The list of 175 indirect labor group employees generated by defendant included names, ages, and job descriptions or titles (such as customer service, door foreman, or draft tech). *Id.* Defendant identified fourteen employees whose jobs would be terminated. Doc. 38-2, at 2; P. App. 24–28, 35. Defendant identified these employees for many different reasons, including redundant layers of supervision or management and/or their positions were eliminated, because they had indicated they were voluntarily retiring within the year, performance, and part-time status. Doc. 38-2, at 5. Defendant placed an "x" in a column next to the job title for each of those employees. P. App. 25–28.

On or about February 17, 2014, defendant advised all fourteen employees that their employment would be terminated as part of the RIF. Doc. 31-1 at 4-5. Of the fourteen employees terminated, thirteen were older than 40 years of age. *Id.*[3] Defendant provided each terminated employee with a Separation Agreement. Doc. 42-1, at 3. The

---

[3] The only terminated employee under 40 years of age was Judy Griswold, Order Processing, age 33. Doc. 31-1 at 5. The remaining thirteen employees ranged in ages from 46 to 67 years old. *Id.*

Separation Agreement included a waiver of ADEA claims against defendant; in other words, if the employees signed the Separation Agreement, they would waive their right to sue alleging age discrimination. *Id*. 3-5. If the employee signed the Separation Agreement, then defendant would provide the employee with severance compensation. *Id*. at 3. The Separation Agreements provided that the employees had forty-five (45) days to consider the Separation Agreement and that the employees could revoke the ADEA waiver and releases within seven days after signing the Separation Agreement. Doc. 32-1, at 4.

On February 20, 2014, a few days after defendant terminated the employees and provided them a copy of the Separation Agreement, defendant mailed to each terminated employee two attachments, marked Exhibit A and Exhibit B, referenced in the Separation Agreement. *Id*. at 1; 42-1, at 3–4. Defendant did not provide the employees with these documents at the time of their termination because there was concern that employees would begin sharing them around the plant and cause confusion and speculation regarding the RIF before defendant could inform each of the employees of their termination. Doc. 42-1, at 4. Exhibit A lists each of the fourteen terminated employees by title and age. Doc. 31-6, at 1. Exhibit B consists of a list of 161 ages, in order from age 23 to 68, described as "Ages as of 2/20/2014 of persons at [the plant] not selected for employee termination program." *Id.* at 2.

Each of the fourteen terminated employees signed the Separation Agreement and received severance compensation. Doc. 42-1, at 3. For example, under the Separation Agreement, plaintiff Behr received a total of $8,347.92 in payments and reimbursement of $2,449.59 for health care coverage. Doc. 5, at 4. Each of the terminated employees signed the Separation Agreement well before the expiration of the forty five day period provided. Doc. 42-1, at 5. None revoked their waivers within the seven days provided in the Separation Agreement. *Id*.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 948–49 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Thus, "the substantive law will identify which facts are material." *Schilf*, 687 F.3d at 949 (quoting *Anderson*, 477 U.S. at 248) (internal quotation mark omitted). "To establish a genuine issue of material fact, [a party] may not 'merely point to self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in [his] favor.'" *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013) (quoting *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005)). Typically, the moving party must support its motion by using "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," to show that there is no genuine issue of material fact before the court. FED. R. CIV. P. 56(c)(1)(A). The court must consider cited material but may also rely on other material present in the record. FED. R. CIV. P. 56(c)(3).

The court must view all "the evidence in the light most favorable to the nonmoving party and giv[e] the nonmoving party the benefit of all reasonable inferences." *Crawford v. Van Buren City., Ark.*, 678 F.3d 666, 669 (8th Cir. 2012) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1035 (8th Cir. 2010)). In order to deny a motion for summary judgment, "the evidence must be 'such that a reasonable jury could return

a verdict for the nonmoving party.'" *Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 791 (8th Cir. 2009) (quoting *Anderson*, 477 U.S. at 248).

Procedurally, "[a] movant for summary judgment . . . must identify those portions of the record which . . . demonstrate the absence of a genuine issue of material fact." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)). If the moving party has done so, then the nonmoving party "must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id*. (citing *Torgerson*, 643 F.3d at 1042). "Speculation and conjecture are insufficient . . . ." *Id*. at 794. (citing *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006)). If the record, viewed as a whole, "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. (citing *Torgerson*, 643 F.3d at 1042). Throughout the summary judgment stage, "the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." *Schilf*, 687 F.3d at 949 (citing *Anderson*, 477 U.S. at 249).

## V. *STATUTORY INTERPRETATION OF OWBPA*

In 1990, Congress enacted the Older Workers Benefit Protection Act (OWBPA) to "clarify the protections afforded older workers under the ADEA." *Parsons v. Pioneer Seed Hi-Bred Int'l, Inc.*, 447 F.3d 1102, 1104 (8th Cir. 2006). The OWBPA is codified at Title 29, United States Code, Section 626 *et seq*. (2016). Section 626(f) sets out statutory requirements that waivers of ADEA claims must meet, at a minimum, to be valid and, thus, enforceable. *See* 29 U.S.C. § 626(f) (listing the mandatory statutory requirements). These requirements mandate that employers give their terminated employees, at a minimum, a certain time period to consider the ADEA claim waivers,

the advice to consult with an attorney, and certain informational disclosures. *Id.* If an employer does not comply with these statutory requirements, then the waiver is not considered knowing and voluntary, which means that it does not bar the employee's ADEA claims. *See generally Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998) (holding that a nonconforming waiver does not bar an employee's ADEA suit). The Eighth Circuit Court of Appeals in *Parsons* stated that "[t]he requirements [of OWBPA] are strict and unqualified; if the waiver does not satisfy the statute, it is ineffective as a matter of law." *Parsons*, 447 F.3d at 1104 (citing *Oubre*, 522 U.S. at 427 ("Congress delineated these duties with precision and without qualification: An employee 'may not waive' an ADEA claim unless the employer complies with the statute.")).

A preliminary matter is whether Congress wrote the statutory requirements in such a manner that a court may understand their demands and strictly enforce them. As with any matter of statutory interpretation, the court turns first to the plain language of the statute. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011) (citing to *United States v. I.L.*, 614 F.3d 817, 820 (8th Cir. 2010) (internal citation omitted) ("The Supreme Court has 'stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.'")). Only "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *I.L.*, 614 F.3d at 820 (internal citations omitted). Thus, only if the plain language is ambiguous will the court inquire into other persuasive aids such as agency regulations and the statute's legislative history.

Title 29, United States Code, Section 626(f)(1), provides in pertinent part:

> Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum–

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under [the ADEA];

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F) . . . . (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

(H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to-(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program . . . .

29 U.S.C. § 626(f)(1). The parties do not dispute that defendant's Separation Agreement complied with most of the provisions of Section 626(f)(1). The parties dispute whether the Separation Agreement complied with Sections 626(f)(1)(A) and 626(f)(1)(H).

Much of the statute is written in clear, plain-language. The court understands that Section 626(f)(1)(A)-(H) lists minimal requirements that Congress designated to ensure that older workers make "knowing and voluntary" waivers of their ADEA claims. 29 U.S.C. § 626(f)(1)(A)-(H). The language becomes blurry, however, at subsections 626(f)(1)(H)(i) and (H)(ii). Various terms in subsection (H) are unfortunately rather ambiguous and fail to offer this court clear guidance. This is not the only court to conclude that Section 626(f)(1)(H) is ambiguous. *See*, *e.g.*, *Burlison v. McDonald's Corp.*, 445 F.3d 1242, 1246 (11th Cir. 2006) (referencing Section 626(f)(1)(H), "[t]he only fair conclusion, then, is that the OWBPA is ambiguous); *Raczak v. Ameritech Corp.*, 103 F.3d 1257, 1259 (6th Cir. 1997) ("We unanimously conclude that because the nomenclature of § 626(f)(1)(H) of Title 29 is ambiguous, a rigid and mechanical interpretation of that provision is inappropriate."). As Section 626(f)(1)(H) is central to this court's analysis of the plaintiffs' motion for partial summary judgment, the court now endeavors to offer its analysis and best understanding of subsection (H) below in connection with the pertinent facts of this case.

Subsection (f)(1)(H) begins with two commands. If a waiver is offered in connection with an employment termination program (like the RIF program here) to a group or class of employees, then (1) the employer must inform the employees of such waivers "in writing in a manner calculated to be understood by the average individual eligible to participate"; and (2) this written notification must be given "at the commencement of the period specified in subparagraph (F) [which is a period of 45 days

here]." 29 U.S.C. § 626(f)(1)(F). Then Subsection (f)(1)(H) breaks into subsections (i) and (ii). 29 U.S.C. § 626(f)(1)(H). Subsection (i) mandates that employees get information as to any class, unit, or group of individuals covered by such program [employment termination program], information as to any eligibility factors for such program, and information as to any time limits applicable to such program. *Id.* Subsection (ii) mandates that employees get information as to the job titles and ages of all individuals eligible or elected for the program, and information as to the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program. *Id.* Subsections (i) and (ii) are conjunctive, as they are joined by the word "and." *Id.*

One issue before the court is the meaning of *commencement*. Does the 45-day period commence upon the presentation of the waiver agreement to the employee? Or does the 45-day period commence when the employer has assembled all the required documents mandated by the OWBPA and finally submits such documents to their eligible employees, even if such disclosure occurs several days after the initial presentation of the waiver agreement to the employees? Section 626(f)(1)(F)(ii) reads "the individual is given a period of *at least* 45 days within which to consider the [waiver] agreement." 29 U.S.C. § 626(f)(1)(F)(ii) (emphasis added). While this does not directly answer the court's questions about the term *commencement* and when the clock on the 45-day consideration period begins to tick, the statutory language, at the very least, informs the court that there needs to be, at a minimum, 45 days in a row where an employee may consider the waiver agreement offered to him or her.

Another issue before the court is the meaning of "class, unit, or group of individuals" and "job classification or organizational unit." 29 U.S.C. § 626(f)(1)(H).

The statute does not define these terms. "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactment to carry 'their ordinary, contemporary, common meaning.'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). When, however, Congress uses technical terms or words of art or of an industry, courts may turn to the industry where they are used to determine their meaning. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 201–02 (1974) (looking to the industry for the meaning of "working conditions" because it is necessary "where Congress has used technical words or terms of art").

Given the technical nature of these terms, the court turns to the regulations of the governing agency, here the Equal Employment Opportunity Commission (EEOC), for insight on their meaning. The EEOC's regulations read: "the scope of the terms 'class,' 'unit,' 'group,' 'job classification,' and 'organizational unit' is determined by examining the 'decisional unit' at issue." 29 C.F.R. § 1625.22(f)(1)(iii)(C) (2016). The regulations define *decisional unit* as:

> [T]hat portion of the employer's organizational structure from which the employer chose the persons who would be offered consideration for the signing of a waiver and those who would not be offered consideration for the signing of a waiver. The term 'decisional unit' has been developed to reflect the process by which an employer chose certain employees for a program and ruled out others from that program.

29 C.F.R. § 1625.22(f)(3)(i)(B). Thus, a job "class, unit, or group" is not equivalent to the decisional unit, but in determining the meaning of these terms with regard to a particular employer, one looks to the decisional unit for guidance. *See id.* In other words, when an employer has identified the decisional unit, that is the group of employees

eligible for termination, then the employer looks within that decisional unit to identify classes, units, or groups of employees against which age comparisons can be made.

A further issue before the court is what kind of informational disclosures the employer is required to give its terminated employees when the statute mandates information pertaining to *job titles* and *ages*. Regarding the term *ages*, EEOC regulations state that "[i]nformation regarding ages should be broken down according to the age of each person eligible or selected for the program and each person not eligible or selected for the program. The use of age bands broader than one year (such as 'age 20-30') does not satisfy this requirement." 29 C.F.R. § 1625.22(f)(4)(ii). The regulations provide helpful guidance for the term *job titles* as follows, "[i]n a termination of persons in several established grade levels and/or other established subcategories within a job category or job title, the information shall be broken down by grade level or other subcategory." 29 C.F.R. § 1625.22(f)(4)(iii). The regulations also provide a sample listing of *ages* and *job titles*. 29 C.F.R. § 1625.22(f)(4)(vii)(D). It is clear from the sample, that the EEOC regards the *job titles* requirement with some degree of specificity. *See id.* The sample chart lists the following job titles: Mechanical Engineers I, Mechanical Engineers II, Structural Engineers I, Structural Engineers II, Purchasing Agents. *See id.*

The statute provides that "the party asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary." 29 U.S.C. § 626(f)(3). In post-hearing briefs, both parties agreed that defendant has the burden of proof. The case law supports this conclusion. S*ee Kruchowski v. Weyerhaeuser Co.*, 446 F.3d 1090, 1093 (10th Cir. 2006) ("As a preliminary matter . . . [f]or claims concerning § 626(f)(1)(A)-(H), the OWBPA clearly places the burden on the party asserting a valid waiver of rights to an age discrimination

claim to show that execution of the waiver was knowing and voluntary."). *See also* Doc. 73, 74 (listing numerous cases supporting the notion that the employer has the burden of proof).

## VI.  DISCUSSION

In their motion for summary judgment, plaintiffs allege their waiver of ADEA claims—in the Separation Agreement that all plaintiffs signed—was noncompliant with the OWBPA's waiver provision embodied in 29 U.S.C. § 626(f)(1)(A) and (H).  Doc. 31 at 2-3.    Plaintiffs generally allege the waiver failed to comply with the OWBPA because it was not "written in a manner calculated to be understood by" an employee. 29 U.S.C. § 626(f)(1)(A); *Id.* at 16.    Plaintiffs more specifically allege defendant's waiver is noncompliant with § 626(f)(1)(H) for four reasons, as follows:

(1)    The waiver failed to comply with the OWBPA's timing requirement that certain information be given to the employees at the commencement of the 45-day consideration period.  29 U.S.C. § 626(f)(1)(H), Doc. 31-1 at 10;

(2)    Exhibit B failed to comply with the OWBPA's informational disclosure requirement that "age" information (of all individuals not selected for the employment termination program) be given and broken down into job category or job title.  29 U.S.C. § 626(f)(1)(H)(ii), Doc. 31-1 at 11–12;

(3)    The waiver failed to comply with the OWBPA's disclosure requirements to provide the "eligibility factors" considered for each employee's selection for the RIF program.  29 U.S.C. § 626(f)(1)(H)(i), Doc. 31-1 at 11–14; and

(4)     The waiver failed to comply with the OWBPA's disclosure requirements because it did not accurately describe the "class, unit or group of individuals" understood as the "decisional unit" used in the RIF.

29 U.S.C. § 626(f)(1)(H); Doc. 31-1 at 16–18.

As the court will discuss below, there is no genuine dispute of material facts here. Thus, the court's analysis entirely hinges upon whether the waiver of ADEA claims in the Separation Agreement complied with the OWBPA's Section 626(f).


### A. No Genuine Issue of Any Material Fact Exists

Defendant asserts there is a genuine issue of material facts.  Doc. 38-1 at 32.  And in the alternative, defendant argues in its cross-motion for summary judgment that there is no genuine issue of any material fact.  Doc. 40 at 2.  The court finds that there is no dispute of material facts here.

The court acknowledges that the mere existence of cross motions for summary judgment does not mean defendant is taking inconsistent positions, or that there may be a genuine issue of any material fact with regard to one motion but not the other.  The court must consider each motion separately.  *Wright v. Keokuk City. Health Ctr.*, 399 F. Supp. 2d 938, 946 (S.D. Iowa 2005) (internal citations omitted).  Also, the court notes that the cross motion for summary judgment before it does not mandate that the court must grant summary judgment here.  "The filing of cross-motions does not concede the absence of a triable issue of fact.  The court is bound in such cases to deny both motions if it finds … there is actually a genuine issue of material fact."  *Id.* (citing *Jacobson v. Md. Cas. Co.,* 336 F.2d 72, 75 (8th Cir. 1964)).

There is no genuine issue of any material fact here, however, because the issue before the court on these cross motions for summary judgment is one of a written waiver's compliance with statutory requirements. In order for an ADEA waiver to be knowing and voluntary, it must (1) satisfy the OWBPA's statutory requirements from the four-corners of the waiver itself, then (2) the court will inquire into whether each plaintiff knowingly and voluntarily executed an OWBPA-compliant-waiver. Embarking on this two-step analysis, the court halts at step one. The court finds that the four-corners of the Separation Agreement fail to comply with the OWBPA. Thus, the court never reaches step two, which would have required determining factual questions like the employees' subjective beliefs as to what they were waiving, whether they had advice of counsel, and other factors that may have shown their waivers were involuntary, even if the waiver otherwise met the minimum requirements under Section 626(f)(1). This is purely a matter of statutory compliance based on a written document.

### B. Compliance with the Requirement for a 45-day Consideration Period

Plaintiffs argue that defendant did not give the information as mandated by Section 626(f)(1)(H), specifically, the information contained in Exhibits A and B, *at the commencement* of the 45-day consideration period. Doc. 31-1 at 10. Defendant provided those lists of terminated employees and employees from whom defendant selected the terminated employees [Exhibits A and B] several days after it terminated the employees and provided them with the Separation Agreement. *Id*. at 6. Therefore, plaintiffs argue that defendant violated 29 U.S.C. § 626(f)(1)(H) mandating that information be presented in writing at the commencement of the 45-day consideration period in which employees would consider waiving their ADEA claims. *Id*. at 10. Plaintiffs rely on the following

case law to support the claim that strict compliance with § 626(f) is required: *Oubre*, 522 U.S. at 427 (finding that a valid release must conform to the strict statutory requirements); *Parsons*, 447 F.3d at 1104 (quoting *Oubre*, 522 U.S. at 427, for the notion that a waiver is only valid if it complies with all the statutory requirements); and *Kruchowski*, 446 F.3d at 1095 (finding that a single violation invalidates the entire waiver). The court agrees "a waiver may not be considered knowing and voluntary unless at a minimum" it meets the listed requirements. 29 U.S.C. § 626(f)(1). Nevertheless, that does not necessarily answer the question of what happens when, as here, an employer provides some of the required information after providing the employee with a waiver if the employer still gives the employee 45 days to consider the waiver.

Defendant claims that it did not provide the terminated employees with Exhibits A and B at the same time it provided them with the Separation Agreements out of consideration for their employees. Doc. 40-1 at 3. Defendant explains that "there was a concern that employees would begin sharing them [Exhibits A and B] around the plant and cause confusion and speculation regarding the reduction in force while employees were still being notified that they would be terminated." *Id.* Further, defendant asserts that "[t]his approach was taken out of concern for employees so they would not learn of the fact that they were part of the reduction in force by virtue of the list." *Id.* Furthermore, defendant argues it gave all plaintiffs a full 45 days from the receipt of Exhibits A and B to consider signing the Separation Agreement and waiving their ADEA claims. Doc. 38-1 at 7–8. The court has no reason to doubt defendant's explanation for the delay in providing the lists to the employees, but the reason for the delay (whether negligent, nefarious, or laudable), is irrelevant.

To determine whether the Separation Agreement complied with the requirements of Section 626(f)(1), the court must read subsections (F)(ii) and (H) together. Section 626(f)(1)(F)(ii) provides that "if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of *at least* 45 days within which to consider the [waiver] agreement." Section 626(f)(1)(H) provides that "if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)), informs the individual in writing" of certain information. 29 U.S.C. § 626(f)(1)(H). The plain language of these sections does not require, or even mention that, an employer must provide this information simultaneously with a separation agreement. What the plain language of the statute does require is that, if an employer requests a waiver, it must provide the employee with certain information, and must allow the employee 45 days from that date to consider the agreement.

The Separation Agreement here (with Exhibits A and B mailed several days later) complied with these statutory requirements. The Separation Agreement plaintiff Behr signed (Doc. 32-1 at 1–7)[4] specifically mentions Exhibit A and Exhibit B as being attached. Page 4 of the Separation Agreement, reads: "Employee has 45 days from the date of receipt of this Agreement and ADEA Waiver to consider and sign them." Doc.

---

[4] The court notes that it reviewed the four Separation Agreements in defendant's appendix (Doc. 38-3) and concluded that while there were some specific provisions dependent on the individual employee (*e.g.*, Robert Lauen received 16 weeks of severance pay (Doc. 38-3 at 27) while Dale Glenn received 26 weeks of severance pay (Doc. 38-3 at 41)), the provisions at issue here are identical in all agreements presented. Also, the parties cite to Mr. Behr's Separation Agreement when examining the agreement language's compliance with the OWBPA, which suggests to the court, again, that all the separation agreements contain the exact same operative language.

31-1 at 4. From the actions and statements made by other employees, it is clear "receipt" included Exhibits A and B. All plaintiffs received a 45-day consideration period starting from when they received Exhibits A and B. *See* Doc. 38-1 at 8 (stating that Karen Ries told at least one plaintiff, Mr. Behr, over the telephone that he had 45 days from the time he received the certified mail containing a set of the documents with Exhibits A and B to sign both the Agreement and ADEA waiver) [the court here understands both documents to comprise the "Separation Agreement" as the court uses such term]. Indeed, the language in the Separation Agreement was also sufficient to put plaintiffs on notice of Exhibits A and B; plaintiff Behr called Karen Ries and inquired where Exhibit A and Exhibit B were (she told Mr. Behr that they were being mailed that same day and that his 45-day consideration period began when he received the exhibits). *See id.* At the motion hearing before this court, the parties agreed that none of the plaintiffs used the full 45-day period to consider signing. *See id.* at 7-8.

Furthermore, the regulatory scheme contemplates that an employer may alter or amend separation agreements after the initial date when employees receive them. When that occurs, the time period for consideration of the agreement restarts the running of the clock. *See* 29 C.F.R. § 1625.22(e)(4) (providing that the time period under Section 626(f)(1)(F) runs from the date of the employer's final offer and any material changes to the final offer will restart the running of the consideration period). It follows, then, that defendant's provision of Exhibits A and B to plaintiffs a few days after defendant provided them the Separation Agreement restarted the running of the consideration period.

Accordingly, the court finds that defendant complied with the OWBPA when it commenced calculation of the 45-day consideration period only after plaintiffs received the Separation Agreement and Exhibits A and B.

*C.*     *Compliance with the Disclosure Requirement for Non-terminated*
*Employees*

Plaintiffs argue that defendant failed to provide information required by the OWBPA. Section 626(f)(1)(H)(ii) requires that terminated employees be informed in writing of: "the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H)(ii). Plaintiffs assert that Exhibit B, which defendant provided ostensibly to comply with Section 626(f)(1)(H)(ii), falls short of complying with the above subsection because it only lists the ages of individuals "facility-wide" who were not terminated as part of the RIF program. Doc. 31-1 at 10. Plaintiff argues Exhibit B does not provide a list of the ages by job classification or organizational unit as required. *Id.* Plaintiffs cite to an EEOC regulation, which provides that "[i]n a termination of persons in several established grade levels and/or other established subcategories within a job category or job title, the information shall be broken down by grade level or other subcategory." 29 C.F.R. § 1625.22(f)(4)(iii). Furthermore, plaintiffs cite the model disclosure chart at 29 C.F.R. § 1625.22(f)(4)(vii)(D) as showing that the ages of those not selected are listed by position titles like: Mechanical Engineers I, Mechanical Engineers II, Structural Engineers I, etc.

On the other hand, defendant argues that plaintiffs' "hypertechnical arguments" are against public policy and are unsupported by the recent trend in case law. Doc. 38-1 at 10. *See*, *e.g.*, *Burlison*, 455 F.3d at 1246 (stating "The only fair conclusion, then, is that the OWBPA is ambiguous."); *Raczak*, 103 F.3d at 1259 (stating "[w]e unanimously conclude that because the nomenclature of § 626(f)(1)(H) of Title 29 is ambiguous, a rigid and mechanical interpretation of that provision is inappropriate");

20

*Ribble v. Kimberly-Clark Corp.*, No. 09-C-643, 2012 WL 589252, at \*6 (E.D. Wis. Feb. 22, 2012) ("The Court therefore concludes that while an employer must comply with the requirements of the OWBPA in order to obtain a valid waiver, the imprecise language of the statute requires that compliance be measured in relation to the purpose underlying the act"). Defendant claims the ages of employees eligible, but not selected, were included in Exhibit B. Doc. 38-1 at 13. Further, defendant argues the statute does not require an employer provide job titles along with age data of eligible, but not selected, employees. *Id.* at 21-22. Defendant points out that the EEOC regulations defined job classifications and organizational units as referring back to the decisional unit. *Id.* at 22.

An examination of the language in Section 626(f)(1) reflects that a waiver must provide information a terminated employee could understand, but Congress used different language to describe the information the employer must provide for terminated employees versus eligible, but non-terminated employees. Section 626(f)(1) provides in pertinent part:

> [A] waiver may not be considered knowing and voluntary unless at a minimum— . . . (H) if a waiver is requested in connection with an exit incentive or other employment termination program . . . the employer . . . informs the individual in writing *in a manner calculated to be understood by the average individual eligible to participate*, as to—(ii) the <u>job titles and ages</u> of all individuals eligible or selected for the program, and the <u>ages</u> of all individuals *in the same job classification or organizational unit who are not eligible or selected for the program*.

29 U.S.C. § 626(f)(1) (emphasis added). Thus, the first clause of subsection (ii) requires both job titles and ages of all selected employees, while the second clause only requires ages of individuals who are eligible but not selected for the program "*in the same job classification or organizational unit.*" *Id.*

Although the requirement of job titles is technically absent from the second clause, the phrase "same job classification or organizational unit" requires reference to the first clause. The "same job classification or organizational unit" refers to the job classification or organizational unit as the terminated employees. *See Burlison*, 455 F.3d at 1246 (stating that the first clause and second clause of subsection (ii) do not make sense unless read in conjunction). Thus, the first clause of subsection (ii) mandates that job titles and age data of all selected employees be disclosed, and the second clause of subsection (ii) mandates that in those same job classifications and organizational units, the employees (eligible for the RIF program) who were not selected have their ages disclosed. Thus, although an employer need not provide the job titles of every employee not terminated, it must provide the terminated employee with job classification or organizational unit information that matches that of the terminated employees so that the terminated employee is informed of relevant, comparative information "in a manner calculated to be understood by the average" terminated employee. 29 U.S.C. § 626(f)(1)(H). In other words, an employer must provide the terminated employee with information by job classification or description similar to the terminated employee's job classification or description so that the terminated employee can compare position and age in an understandable way before an employee can knowingly and voluntarily waive his or her rights to sue for age discrimination.

The model disclosure chart from the EEOC regulations supports this conclusion. Published here in part, it provides:

> **(D)** The following is a listing of the ages and job titles of persons in the Construction Division who were and were not selected for termination and the offer of consideration for signing a waiver:

| Job Title | Age | No. Selected | No. not selected |
|---|---|---|---|
| (1) Mechanical Engineers, I | 25 | 21 | 48 |
| | 26 | 11 | 73 |
| | 63 | 4 | 18 |
| | 64 | 3 | 11 |
| (2) Mechanical Engineers, II | 28 | 3 | 10 |
| | 29 | 11 | 17 |
| | Etc., for all ages | | |
| (3) Structural Engineers, I | 21 | 5 | 8 |
| | Etc., for all ages | | |

29 C.F.R. § 1625.22(f)(4)(vii)(D).

As is evident from reading this chart, the primary purpose is to inform terminated employees of possible age discrimination claims they may have. The EEOC model disclosure would allow an employee to easily and readily compare how many Structural Engineers I were retained and how many Structural Engineers I were terminated. This model disclosure provides information in a manner calculated to be understood by the average employee who wishes to determine the ages of Structural Engineers I in both of these groups (those retained and those terminated). The model disclosure does not provide the titles of each of the employees within the category of Structural Engineers, but does provide sufficient information for comparative purposes.

Congressional intent behind the OWBPA was to protect older workers from age discrimination by employers. *See* H.R. REP. NO. 101-664, at 7–24 (1990)

(accompanying H.R. 3200) (House Report reflects that Congress purposefully enacted the OWBPA to provide more stringent waiver protections for older workers). That goal cannot be achieved if employers do not give their employees meaningful, comparative information. As the Eleventh Circuit Court of Appeals succinctly states:

> The OWBPA's informational requirements are designed to ensure that older employees are provided with information necessary to evaluate any potential ADEA claims they may have before deciding to release them . . . . In order to evaluate their claims, employees need appropriate data to conduct meaningful statistical analyses.

*Burlison*, 455 F.3d at 1247. Further, "the data must permit employees and their attorneys to make meaningful comparisons to determine whether an employer engaged in age discrimination." *Id*.

In this case, defendant provided terminated employees with Exhibit B which reads: "Ages as of 02/20/2014 of persons at Curries facility not selected for employee termination program: Age 23, 24, 24, 26 . . . 64, 64, 65, 68." Doc. 31-6 at 2. This is not meaningful data in the context of the OWBPA. This case is similar to *Branker v. Pfizer, Inc.*, 981 F. Supp. 862 (S.D.N.Y. 1997). In *Branker*, the court in dicta discussed an Attachment A which read "[t]he ages of individuals not given the separation program are ages 23 through 67, excluding ages 40, 50, 55, 59, 60, 63, 64, 66." *Id*. at 867 n.3. The court found that attachment did not allow the terminated employee to determine the ages of the non-terminated employees in the decisional unit or determine whether the non-terminated employees were in the same job classification or organization unit as those terminated as required by 29 U.S.C. § 626(f)(1)(H). *Id*. Furthermore, the court found Attachment A was not written in a manner understandable by the average individual as

required by 29 U.S.C. § 626(f)(1)(H), and, thus, Attachment A was invalid under the OWBPA. *Id.*, at 867.

Similarly in this case, common sense tells anyone looking at this list in Exhibit B that it provides insufficient information to discern whether there is a pattern of age discrimination in the selection of those terminated and those who were not. Although, the court believes that defendant may very well have been trying to comply with the OWBPA in good-faith (there is no evidence before the court of bad faith), the court finds that Exhibit B merely lists ages without specifying that these ages are of "individuals in the same job classification or organizational unit" as those listed in Exhibit A. Doc. 31-6 at 2-3; 29 U.S.C. 626(f)(1)(H)(ii). Exhibit A lists the job titles of order technician, area manager doors, manufacturing engineer, etc. Doc. 36-1 at 1. Exhibit B can only make sense if defendant provided some job classification or organizational unit that would allow an employee to compare it to Exhibit A. Although defendant did not have to provide job titles in Exhibit B, it did need to provide the same job classifications or organizational units for the non-terminated employees as would apply to the terminated employees. *See Loksen v. Columbia Univ.*, No. 12 CIV. 7701 CM, 2013 WL 5549780, at *7–8 (S.D.N.Y. Oct. 4, 2013)(holding that an ADEA release was invalid under the OWBPA because "[a]s a member of the Radiation Safety department who was not being selected for termination or offered severance package, Kim's job title and age should have been listed. 29 U.S.C. § 626(f)(1)(H)(ii) (requiring disclosure of 'the ages of *all* individuals in the same job classification or organizational unit who are not eligible or selected for the program.')").

Furthermore, defendant had a list of the employees, both terminated and not terminated, that illustrates how easily the employer could and should have provided the

terminated employees with meaningful information. The list of 175 employees listed the employees by job title. Doc. 31-6 at 4-7; P. App. 25–28. Defendant placed an "x" next to the names of the terminated employees. Defendant was not required to provide this list to the terminated employees. Nor was defendant required to provide job titles for non-terminated employees pursuant to Section 626(f)(1)(H)(ii). 29 U.S.C. 626(f)(1)(H)(ii). Defendant was, however, required to provide the same job classification or organizational unit as the terminated employees. That information existed on this list. For example, Ronald Rasmussen, age 52, was a terminated employee with the title Customer Service-Mason City. Doc. 31-6 at 4. There are fourteen other employees with the words "Customer Service" in their title. *Id.* A logical and informative job classification for Rasmussen, then, is "customer service." The comparative information for his job classification would have informed him that the thirteen other customer service employees not terminated ranged in age from 39 to 62. Perhaps defendant would place other employees within the same job classification or organizational unit, but, at the very least, this type of job classification provides comparative information.

Defendant argues that the job classification or organizational unit is the same as the decisional unit, and the decisional unit in this case was the indirect labor group. Therefore, defendant only had to provide the ages of all of those 175 employees. This interpretation of job classification or organizational unit does not survive scrutiny. The employer is in the position of defining the "decisional unit," the group of employees who fall within the category of eligible employees. For example, a company could declare that the decisional unit consists of all employees working at a particular plant. The company could assert that such a group is the organizational unit from which all terminated employees will be selected. If, as here, the plant employed 600 employees

and the employer terminated fourteen of them, then defendant would argue it complied with the statute if it provided the terminated employees with columns of 586 ages, with no further description or information. This is not what Congress intended to accomplish when it drafted and passed the OWBPA.

For the reasons above, the court finds that the Separation Agreement failed to comply with 29 U.S.C. § 626(f)(1)(H)(ii) because defendant did not provide the terminated employees with the same job classification or organizational unit information for the non-terminated employees (those listed in Exhibit B) as defendant did for the terminated employees (those listed in Exhibit A) in a manner calculated to be understood by the average employee.

### D.  Compliance with the Disclosure Requirement for the Eligibility Factors

Plaintiffs argue that the Separation Agreement is void of any eligibility factors, thus, defendant violated 29 U.S.C. §§ 626(f)(1)(A), 626(f)(1)(H)(i).  Specifically, plaintiffs argue that defendant did not disclose "all [the] eligibility factors considered in general" that led to each employee's selection for the termination program.  Doc. 31-1 at 11, 13.  Plaintiffs assert that defendant's director of human resources testified to selecting employees for the RIF program for "many different reasons," none of which were listed in the waiver.  Doc. 31-1 at 15–16 (internal quotations omitted).  Such reasons included: "redundant layers of supervision or management, and/or their positions were eliminated, because they had indicated they were voluntarily retiring within the year, for performance reasons, or due to part-time status."  Doc. 31 at 4 (citing P. App. 2 (Affidavit of Gordon ¶¶ 5–6)).  Plaintiffs cite to *Pagliolo v. Guidant Corp.*, 483 F. Supp. 2d 847 (D. Minn. 2007) and *Kruchowski v. Weyerhaeuser Co.*, 423 F.3d 1139 (10th Cir.

2005) in support of their assertion that eligibility factors are the factors used to analyze the employees to determine who will be subject to the RIF program and that all eligibility factors must be disclosed. Doc. 31-1 at 13. In *Pagliolo*, the court stated that "'eligibility factors' refers to the 'factors used to determine who is subject to a termination program, not the factors used to determine who is eligible for severance pay after termination.'" 483 F. Supp. 2d at 861 (citing *Commonwealth of Massachusetts v. Bull HN Info. Sys., Inc.*, 143 F. Supp. 2d 134, 147 n.29 (D. Mass. 2001)). In *Kruchowski*, the court found that an employer violated the OWBPA when it used these eligibility factors—leadership, abilities, technical skills, and behavior—to select employees for its RIF yet failed to disclose these to its terminated employees. 423 F.3d at 1144.

Defendant argues, and the court agrees, that *Kruchowski* offers questionable and limited guidance, given that the 2005 opinion was superseded and remanded in 2006. In its 2006 opinion, the Tenth Circuit found the employer's waiver invalid due to an improper decisional unit, and the court never reached the issue of "eligibility factors." *See Kruchowski*, 446 F.3d at 1090–96. Also, the court finds the April 2007 *Pagliolo* opinion is called into uncertainty by the May 2007 *Pagliolo* opinion. In May 2007, the Minnesota District Court questioned its earlier analysis on "eligibility factors" from April 2007. *Pagliolo v. Guidant Corp.*, No. 06-943 DWFSRN, 2007 WL 1567617, at *3 (D. Minn. May 29, 2007). It stated:

> The Court concluded that "eligibility factors" under the OWBPA refers to the factors used to determine who is subject to a termination program, not to the factors used to determine who is eligible for severance pay after termination. The Eighth Circuit has not ruled on this issue and the law in other circuits is unclear. The Court agreed with the court's interpretation of eligibility factors in *Commonwealth of Ma. v. Bull HN Info. Sys.*, 143 F. Supp. 2d 134, 147 (D.Mass.2001). Arguably, the Tenth Circuit called into doubt this Court's view when it amended *Kruchowski v. Weyerhaeuser*

> *Co.*, 423 F.3d 1139 (10th Cir. 2005) ("*Kruchowski I*") (discussing
> eligibility factors and relying on *Bull* ) with *Kruchowski v. Weyerhaeueser
> Co.*, 446 F.3d 1090, 1095-96 (10th Cir. 2006) ("*Kruchowski II*")
> (withdrawing discussion of eligibility factors). Thus, the Court finds that
> there is substantial ground for difference of opinion on this issue. Granting
> Defendants' motion will allow the Eighth Circuit to determine what the law
> is in this Circuit.

*Id.* Thus, the court finds the cases of *Kruchowski* and *Pagliolo* not particularly helpful in defining eligibility factors. They are instructive only to the extent they reflect the uncertain meaning of the term "eligibility factors."

On the other hand, defendant argues that under the EEOC regulations, eligibility factors mean "those that make an employee eligible for severance benefits or a severance plan, and not the factors that an employer considered in determining which employees would be selected for termination in the RIF." Doc. 38-1 at 27, 30 (citing 29 C.F.R. § 1625.22(f)(1)(iii)(A)-(B); *Recchia v. Kellogg Co.*, 951 F. Supp. 2d 676, 693 (D.N.J. 2013) (finding that an employee was entitled to severance benefits under Kellogg's plan upon the submission of an unrevoked form); *Ricciardi v. Elec. Data Sys. Corp.*, No. 03-5285, 2007 WL 576323, *4 (E.D. Pa. Feb. 20, 2007)).[5] Defendant asserts that it

---

[5] This court also considered the value of *Foster v. Mountain Coal Co.*, on this issue, which was also cited by defendant. *Id.* at 30. In *Foster v. Mountain Coal Co., LLC*, No. 12–cv–03341–LTB–MJW, 2014 WL 2024877, at *10 (D. Colo. May 14, 2014), the court found that the disclosure properly listed the following eligibility factors: "years of service at West Elk Mine, current miner rate of I, II, or II [sic]; skills assessment within current group (production maintenance, or surface groups); Certifications; behavior based safety standards; and current corrective action step." Defendant's reliance on the May 14, 2014, *Foster* decision is misplaced, however, because the court reversed that decision on July 20, 2014, *see generally Foster v. Mountain Coal Co., LLC*, 61 F. Supp. 3d 993 (D. Colo. 2014) (reversing its earlier decision that the defendant did not strictly

complied with the disclosure requirement because its waiver stated: "[t]he Employer agrees to provide Employee with the following salary continuation and benefits as consideration for entering into this Agreement, provided Employee signs and abides by this Agreement." Doc. 38-1 at 30. Separation Agreement at III(A). Also, the individual separation agreements informed employees of the severance pay to which they were entitled. *Id.* Thus, defendant concludes that it complied with the OWBPA and EEOC regulations in disclosing its eligibility factors for severance pay (here all terminated employees were eligible for severance pay as long as they signed the waiver); and defendant asserts that it was under no obligation to disclose the factors it considered to select individuals within its decisional unit for termination. *Id.* at 30–31.

The court agrees with the defendant. The statute provides that a waiver is knowing and voluntary "if a waiver is requested in connection with an . . . employment termination program [here the RIF program] offered to a group or class of employees, the employer . . . informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to . . . any eligibility factors for such program." 29 U.S.C. § 626(f)(1)(H)-(H)(i). Furthermore, the EEOC's model waiver indicates an employer fulfills the "eligibility factor" disclosure requirement by simply stating: "(B) All persons in the Construction Division [the decisional unit] are eligible for the program." 29 C.F.R. § 1625.22(f)(4)(vii)(B). Accordingly, both the statutory language and the regulations suggest that it was sufficient for defendant to identify the group eligible for termination, and it was not required to identify the factors it considered in determining which of the eligible employees to terminate.

---

comply with the OWBPA and now finding that the ADEA waiver was valid and thus granting defendant's motion for summary judgment).

The court could not find any Eighth Circuit authority directly examining the OWBPA's "eligibility factors" disclosure requirement. The recent case of *Recchia v. Kellogg*, cited by defendant, is instructive. The *Recchia* Court found that "eligible for such program" refers only to which employees are eligible to sign the ADEA claim waiver and receive severance pay. *Recchia*, 951 F. Supp. 2d at 692–93. The court finds such an interpretation is supported by the language in the model waiver in the EEOC regulations quoted above. *Supra*, 22-23. In *Recchia*, the court found that the whole decisional unit was eligible to receive severance pay as long as the waiver was signed and unrevoked. *Id.* at 680–84. It appears logical to the court that in the context of an RIF program, when an employer presents an employee with a waiver of his or her ADEA claims under the OWBPA, that such employee is eligible to sign such a waiver and receive severance pay. Furthermore, it makes sense that an employer would wish to expansively offer a waiver of ADEA claims in the context of a group termination program as a way to reduce litigation costs, while simultaneously benefiting terminated employees who receive monetary consideration.

Thus, the court finds that the Separation Agreement complied with the requirement to identify the employees eligible for termination, pursuant to Section 626(f)(1)(H)(i).

### E. Compliance with the Disclosure Requirement for the Decisional Unit

Plaintiffs argue that defendant failed to disclose its decisional unit in a manner understandable to the "average employee". Doc. 31-1 at 16. Specifically, under 29 U.S.C. § 626(f)(1)(H)(i), employers are required to disclose in writing in a manner understandable by its employees the "class, unit or group of individuals" covered by the group terminations. *Id.* Plaintiffs assert that "class, unit, or group of individuals" refers

back to the decisional unit. *Id.* (citing 29 C.F.R. §1625.22(f)(1)(iii)(C)). This court concludes, however, that "class, unit, or group of individuals" is not identical to the decisional unit; rather, it is to be identified by reference to the employees who constitute the decisional unit. *See* 29 C.F.R. § 1625.22(f)(1)(C) ("the scope of the terms 'class,' 'unit,' 'group,' 'job classification,' and 'organizational unit' is determined by examining the 'decisional unit' at issue."). Plaintiffs claim that defendant improperly labeled its decisional unit as the "indirect labor group" for its February 2014 RIF program. Doc. 31-1 at 17–20. Plaintiffs argue that (a) the Separation Agreement does not describe the decisional unit in a manner calculated to be understood by the average employee recipient, and (b) that the real decisional unit used was much smaller than the entire indirect labor group. *Id.* at 17–18.

Defendant maintains that its decisional unit was the "indirect labor group," and that term was frequently used at the plant and understood by the average employee. Doc. 38-1 at 15–21. The court agrees with defendant on this issue. Defendant notes that the plant management was instructed to reduce $1.4 million of indirect personnel expenses, and that employees who worked in direct production could not be considered. *Id.* at 14–15. Indeed from the facts, it appears that defendant did only consider indirect production employees; namely, the indirect labor group employees. *Id.* at 15. Furthermore, defendant claims—the court finds this claim both believable and realistic—that plant employees understood the term Indirect Labor Group to mean *not* the direct production employees (understood as "those employees who work on the manufacturing floor and add value to the product in the manufacturing process."). *Id.*

Again, the EEOC regulations define *decisional unit* as "that portion of the employer's organizational structure from which the employer chose the persons who

would be offered consideration for the signing of a waiver and those who would not be offered consideration for the signing of a waiver." 29 C.F.R. § 1625.22(f)(3)(i)(B). Here defendant's Separation Agreement on the first page reads:

> B. Employee is one of several employees in the *Indirect Labor Group* at Curries who have been selected for an employee termination program at the Employer's Mason City, Iowa facility. All affected employees at Curries will be terminated in February 2014 . . . ."

Separation Agreement at I(B) (*emphasis added*); Doc. 32-1 at 1. The court finds the identification of the "Indirect Labor Group" as the decisional unit was proper. *See Burlison*, 455 F.3d at 1249 (finding that the facts support that the employees were indeed chosen from the 208 employees in the Atlanta, Nashville, and Greenville regions and, thus, those 208 employees properly "constitute[d] the appropriate decisional unit."). *See also Kruchowski*, 446 F.3d at 1094 (the May 2006 decision) (finding that the decisional unit presented to employees, all salaried employees at the Valliant Containerboard Mill, was improper as the actual decisional unit used was "those salaried employees reporting to the Mill manager."); *Adams v. Moore Bus. Forms, Inc.*, 224 F.3d 324, 329–30 (4th Cir. 2000) (finding that the proper decisional unit included only the employees at the Buckhannon plant as there was no evidence to support the allegation that the employer considered other plants' employees for termination as well).

### F.    Inclusion of an Attorney's Fees Provision in the Separation Agreement

Plaintiffs argued (a) that the claim in the Separation Agreement demanding attorney's fees upon breach of the Separation Agreement was void under law (Doc. 31), and (b) that the inclusion of such language had a chilling effect on all employee recipients of the Separation Agreement (Doc. 42 at 5 (citing to Waiver of Rights and Claims: Tender

Back of Consideration, 65 Fed. Reg. 77438, 77440–42 (Dec. 11, 2000)). Plaintiffs suggest that the mere inclusion of an attorney's fees provision establishes that their waivers were not knowing and voluntary because of the chilling effect.

The Separation Agreement reads, under Section V, Additional Terms and Conditions, as follows:

> B. Breach of Agreement. If the Employee breaches any provision of this Agreement, the Employer, in its sole discretion, may discontinue the payment of any further salary continuation or other benefits provided for in this Agreement, other than those required by law, and Employee will be liable to the Employer for damages and/or equitable relief and attorneys fees, as a court may deem appropriate.

Separation Agreement at V(B); Doc. 32-1 at 4.

Defendant agrees it cannot recover attorney's fees in connection with the waiver of ADEA claims, pursuant to 29 C.F.R. § 1625.23(b) (2016), and, thus, has withdrawn any claim for attorney's fees against plaintiffs. Doc. 38-1 at 36. So, only plaintiffs' second argument is left unresolved. Although logical, the court finds that a chilling effect does not have a legal implication in the OWBPA statutory landscape here in the first-step of the court's analysis. As the court initially described, examining ADEA waivers of older employees protected under the OWBPA is a two-step analysis (*see supra* Section V. Statutory Interpretation of OWBPA). First, the court examines if the waiver agreement on its four-corners complies with the minimum statutory requirements set out in 29 U.S.C. § 626(f). Second, the court examines whether the individual employees knowingly and voluntarily waived their ADEA claims. The court reaches step two only if it first finds the employer complied with all the minimum requirements under step one.

Here, the court never passes step one as it finds that the Separation Agreement violates the OWBPA's minimum statutory requirements. Thus, the court need not analyze the plaintiffs' subjective knowledge and the voluntariness of their waivers, where the argument of a chilling effect could have an implication. The concern that employers could include invalid attorney fee recovery provisions to scare employees away from pursing their OWBPA challenges is a legitimate one. Doc. 42 at 5 (citing 65 Fed. Reg. 77438, 77440–42). On the other hand, separation agreements, like the one at issue in this case, often address waivers of other rights, not just ADEA claims, where recovery of attorney's fees may not be barred by statute. The Separation Agreement at issue in this case contained a severability clause (Doc. 32-1 at 5), which arguably would negate the argument that the mere inclusion of an attorney's fees provision violated the OWBPA. Nonetheless, because the court never passes step one, it declines to rule on a step two matter; namely, whether inclusion of an attorney's fees provision had a chilling effect on plaintiffs that made their waiver of ADEA claims either unknowingly or involuntarily.

## VI. CONCLUSION

In sum, the Separation Agreement is unenforceable to the extent it purports to bar plaintiffs' ADEA claims. The waiver provisions did not comply with the minimum requirement that defendant provide terminated employees with job classification and age information of the non-terminated in a manner calculated to be understood by the average employee. In Exhibit B, defendant provided plaintiffs with nothing more than a list of 161 ages of employees not terminated as part of the RIF, with no further description of their position. This failed to provide the terminated employees with the type of

comparative data contemplated by the OWBPA that would allow older terminated workers the ability to determine if their employer terminated them because of their age.

In light of the foregoing, plaintiffs' motion for partial summary judgment (Doc. 31) is **GRANTED**. Defendant's motion for summary judgment (Doc. 40) is **DENIED**.

**IT IS SO ORDERED** this 29th day of July, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa