IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DENNIS BEHR, and GLENN WILLIER, and Employees Similarly Situated to Them, | ‖ | No. 14-CV-3075-CJW |
| Plaintiffs and Counter Defendants, | ‖ | |
| vs. | ‖ | **ORDER** |
| AADG, INC., d/b/a Curries, | ‖ | |
| Defendant and Counter Claimant. | ‖ | |

TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 2

II.    PROCEDURAL HISTORY .................................................... 2

III.   UNDISPUTED FACTS ........................................................ 3

       A.    Filing with Agency .................................................. 3

       B     Reduction in Force ................................................. 4

       C.    Employees fired due to their intent to retire in 2014 ........................... 6

       D.    Employees fired due to combination of objective
             and subjective factors ............................................10

IV.    SUMMARY JUDGMENT STANDARDS ...........................12

V.     LEGAL STANDARDS ......................................................14

VI.    DISCUSSION ................................................................17

       A.    Disparate impact   ..................................................17

       B.    Disparate treatment ...............................................22

VII.   CONCLUSION ...............................................................29

## I. INTRODUCTION

Before the Court is defendant's Motion for Summary Judgment (Doc. 105) and plaintiffs' Second Motion for Partial Summary Judgment (Doc. 106). The Court heard oral argument on both motions on June 27, 2017. For the reasons that follow, the Court grants in part and denies in part defendant's motion for summary judgment, and denies plaintiffs' motion for summary judgment.

## II. PROCEDURAL HISTORY

In November 2014, plaintiff Dennis Behr filed a complaint in this Court against defendant alleging discriminatory discharge due to Behr's age. (Doc. 2). Defendant filed an answer and asserted the counterclaim of breach of contract. (Doc. 5). On August 18, 2015, plaintiffs filed an Amended Complaint (Doc. 25) to add a second named plaintiff, Glenn Willier. The First Amended Complaint alleged: Count One—Age Discrimination in violation of 29 U.S.C. §§ 621 *et seq.* (ADEA) on behalf of plaintiff Dennis Behr and added Count Two—Age Discrimination in violation of 29 U.S.C. §§ 621 *et seq.* (ADEA) on behalf of plaintiff Glenn Willier. The Court granted conditional class certification on October 6, 2015. (Doc. 28). In February 2016, plaintiffs filed a Second Amended Complaint. (Doc. 61). The Second Amended Complaint added the allegation that "AADG's 'Reduction in Force' program had a disproportionate adverse effect on older employees." (*Id.*, at 4 ¶ 28 and 6 ¶ 43).

On November 20, 2015, plaintiffs filed their first motion for partial summary judgment. (Doc. 31). On December 21, 2015, defendant filed a cross-motion for summary judgment. (Doc. 40). On April 6, 2016, the Court heard oral arguments from the parties on these motions. (Doc. 71). On July 29, 2016, after post-hearing briefings were submitted by the parties (Docs. 73 & 74), the Court granted plaintiffs' first motion for partial summary judgment and denied defendant's cross-motion for summary judgment. (Doc. 82). The Court found that the "Separation Agreement, General Release

and Covenant Not to Sue" (Separation Agreement), signed by all 14 employees terminated under defendant's Reduction in Force (RIF) program, contained an invalid and unenforceable ADEA (Age Discrimination in Employment Act) waiver.

On October 5, 2016, the Court granted defendant's motion for Certificate of Appealability on its Order Granting Partial Summary Judgment to Plaintiffs (Doc. 84) and stayed the proceedings. (Doc. 91). The Eighth Circuit Court of Appeals denied the petition for permission to file interlocutory appeal on December 22, 2016. (Doc. 93). In January 2017, the Court issued a Second Revised Scheduling Order and a Second Revised Trial Management Order. (Docs. 100 & 101). In April 2017, the Court issued a Third Revised Trial Management Order. (Doc. 103). Discovery closed May 10, 2017. All dispositive motions were due on May 22, 2017. A jury trial is scheduled in this matter on November 1, 2017.

### III.   UNDISPUTED FACTS

Based on the parties' respective filings, the Court finds that the relevant facts set forth below, unless otherwise noted, are undisputed for purposes of the motions for summary judgment.

### A.   Filing with agency

It is undisputed that plaintiffs Dennis Behr and Glenn Willier each timely filed a complaint with the Iowa Civil Rights Commission (ICRC).[1] On May 12, 2014, plaintiff Dennis Behr filed his original Complaint Form with the Iowa Civil Rights Commission (ICRC). Plaintiff Behr wrote: "I had worked at [defendant] for almost thirty-one years when I was terminated on February 17, 2014. . . . I believe I was selected to be included in the reduction in force because of my age. I was sixty years old at the time of my termination." (Doc. 105-2, at 061-062). Plaintiff Glenn Willier filed his original

---

[1] It is disputed whether either plaintiff asserted a claim of disparate impact in his complaint, thus administratively exhausting the theory of disparate impact.

complaint on September 25, 2014, alleging that "I am 65 years old and my employer terminated me. They told me I was terminated as part of a reduction in force. I believe I was chosen for termination because of my age." (*Id.*, at 044). ICRC received plaintiff Glenn Willier's Questionnaire on November 4, 2014, wherein he stated: "[Defendant] retained numerous younger employees with less experience or seniority while terminating me and other older workers." (Doc. 105-3, at 048). Plaintiff Dennis Behr then filed an amended complaint with the ICRC to add the following statement, "I believe the company also discriminated against others who were similarly situated to me on the basis of age." (*Id.*, at 054).

### B. Reduction in Force

On February 5 and 6, 2014, Curries' President and Chief Executive Officer (CEO), Jerry Currie, and its Director and Manager of Operations, Ross Buchele, attended an AADG business meeting in Easton, Pennsylvania. On February 6, they were informed that they needed to cut $1.4 million in indirect personnel costs. (Doc. 130-2, at 1). Kent Winters, Vice President/General Manager of hollow metal operations, was also present at the meeting. They classified 175 employees as indirect labor employees eligible for the RIF. Vicki Gordon, Human Resources Director of the ASSA ABLOY Door Group, sent Kent Winters a list containing indirect labor employees' names, ages, and job titles.[2] Currie and Buchele drafted a list of employees to be terminated as part of the RIF. Mark Evers, Human Resources Director at Curries, was not consulted until after the termination list was completed.

---

[2] Defendant contends that this list (containing ages) was not used to create the preliminary list of employees who would be terminated, but rather was subsequently used to review the ages of those already selected. (Doc. 130-2, at 3). Furthermore, defendant contends that this is not a material fact.

Defendant had written policies setting forth factors to be considered in selecting "salaried" and "hourly" employees for termination in the RIF. Among other things, those policies called for job performance to be a factor in determining RIF eligibility. Currie and Buchele did not review any job performance documents nor consult with any supervisors or managers when they decided on February 6 which employees would be terminated.[3]

Later in February, defendant terminated 14 employees[4] pursuant to a RIF. Only indirect labor employees were eligible under the RIF program; direct production employees were ineligible.

The 14 terminated employees included:

| Name | Age | Job Title |
|------|-----|-----------|
| **Dennis P. Behr** | 59 | Maintenance Electrician X Lead |
| **Glenn Willier** | 64 | General Maintenance |
| Mark F. Evers | 65 | Director-Human Resources |
| **Michael D. Eppens** | 46 | Door Foreman |
| Larry Gustafson | 65 | Draft Tech |
| Thomas E. Dempsey | 64 | Maintenance-Electrical-X |
| **Dale E. Glenn** | 51 | Manufacturing Engineer |
| **Robert R. Lauen** | 64 | Pricing DBC |
| **Curtis B. Darnell** | 53 | Project Manager |
| Thomas M. Lewis | 62 | Customer Service Assistant |
| Judy A. Griswold | 33 | Order Processing-C1 |
| Douglas Schroeder | 59 | Shared Services Manager |

---

[3] Defendant contends that this is immaterial to its summary judgment motion, but alleges that Ross Buchele and Jerry Currie were themselves supervisors/managers and that they did consult with Jay Hain and Dean Peterson post-February 6 before the final selection of the final list of employees terminated under the RIF. (Doc. 130-2, at 5, ¶ 17)

[4] All 14 employees signed Separation Agreements (which plaintiffs contend are not materially relevant in the summary judgment context as the Court previously invalidated the ADEA waiver provisions). However, these signed agreements contained a "no rehire" clause. *(Doc 117, at 329, 79:6-14 (a no rehire clause means employees are not eligible for rehire according to Kent Winters' deposition)).*

| Ronald A. White | 67 | Shipping Supervisor |
| Michael S. Ballard | 63 | Cost Accountant |

(Doc. 117, at 113-18 (list of the decisional unit dated 2/13/14 sent by Human Resources Director Vicki Gordon to Mark Evers and Karen Ries) (emphasis for plaintiffs added)).

The six terminated plaintiffs will be discussed at length below (Dennis Behr and Glenn Willier, and conditionally certified opt-in plaintiffs Robert Lauen, Dale Glenn, Curtis Darnell, and Michael Eppens). The other eight terminated employees did not opt-in to the class. According to defendant, Judy Griswold (age 33[5]) was terminated because she had not completed job training and her duties were absorbed by others. (Doc. 105-3, at 022 (defendant's amended answers to interrogatories)). According to defendant, Tom Lewis was terminated as he was the only part-time employee. (*Id.*). Plaintiffs dispute this reasoning and allege that "Lewis, age 62, was the oldest of 14 employees in the customer service department." (Doc. 115, at 8). Ron White, according to defendant, was terminated because there was redundancy in the management layer of the shipping department. (*Id.*, at 12). Doug Schroeder's position was eliminated. (*Id.*). Mark Evers, Thomas Dempsey, and Larry Gustafson were selected due to previous indications of intention to retire in 2014. (*Id.*, at 8).

## C. *Employees fired due to their intent to retire in 2014*

Defendant included plaintiffs Robert Lauen and Glenn Willier in the RIF because it believed these employees[6] had "previously indicated a plan to retire during 2014." (Doc. 117, at 11). Plaintiffs wish to qualify this fact with the phrasing that these employees had "expressed plans of possibly retiring later in 2014 or had otherwise talked

---

[5] Judy Griswold is the only terminated employee below 40 years of age, and thus outside of the protected class of the ADEA.

[6] Defendant also terminated three non-plaintiff employees—Mark Evers, Thomas Dempsey, and Larry Gustafson—based on the same reasoning.

about retirement." (Doc. 115, at 8 ¶ 22). In her deposition, Vicki Gordon, Director of Human Resources for ASSA ABLOY Door Group, explained the thought-process regarding the RIF. Defendant was required to cut costs, yet it did not want to "take out people." (Doc. 105-2, at 107, 127:15-20). Ms. Gordon testified that in order to "salvage" other employees who, regardless of age, intended to stay with defendant for a longer term, defendant included in the RIF employees who intended to leave the company. This included employees planning to retire soon due to their financial independence.[7] She stated that hypothetically any employees desiring to leave (e.g., move to Oregon) would have been included in the RIF for the same reasoning.[8]

### 1. Glenn Willier

Plaintiffs propounded interrogatories on defendant asking defendant to provide a detailed explanation of the basis for defendant's belief that these employees intended to leave the company. Defendant answered Interrogatory No. 15 as follows:

**Glenn Willier**
a. [Defendant] is uncertain of the exact date he first informed [defendant] of retirement plans, but he had discussed it prior to February 5, 2014.
b. Initially planned to retire in March 2014, then discussed the possibility of working 3 days a week until retirement in August or September of 2014.
c. Willier informed Doug Schroeder of this fact and it was discussed with others in the maintenance department. He may have informed others of this. This answer may be supplemented.
d. See Doug Schroeder e-mail to Ross Buchele and Jerry Currie dated February 5, 2014 [document evidencing individual's intent to retire] [Exhibit 25; Doc. 110, at 16].

---

[7] Plaintiffs contend that this is not a statement of fact, but rather an argument in support of the RIF.

[8] Plaintiffs dispute this as they assert this statement is disputed by record evidence and is material. (Doc. 115, at 15 ¶ 35). Also, plaintiffs characterize Ms. Gordon's testimony here as argument.

(Doc. 110, at 13-14). On March 6, 2017, Ross Buchele, defendant's former director of operations, was deposed. Mr. Buchele was tasked with "helping to select the individuals that were to be part of the [2014] RIF." (*Id.*, at 34, 12:14-16). Mr. Buchele explained that the selection criteria included "nondirect labor staffing," so in other words, "indirect and support roles and positions." (*Id.*, at 12:19-21). Mr. Buchele testified that Glenn Willier, who he described as being defendant's "best" mechanic, expressed an intent to retire in the first half 2014. (*Id.*, at 36-37, 36:5-8, 38:22-23). Mr. Buchele believed Glenn Willier to be "kicking around the idea" of staying on and working on a limited part-time basis. (*Id.*, at 37-38, 39:13-15, 43:14-15). Furthermore, Doug Schroeder made Jerry Currie and Mark Evers aware that plaintiff Glenn Willier was kicking the idea around and, specifically, that plaintiff Glenn Willier had proposed working three days a week from approximately May 2014 through August/September 2014. (Doc. 105-2, at 148). Willier was the oldest general maintenance worker out of a total of nine workers. (Doc. 117, at 115). Plaintiffs dispute that Willier was, in fact, actually planning on retiring. According to plaintiffs, Willier's part-time work proposal was discussed not as a temporary setup, but rather, it was anticipated that after Willier began working part-time, they would see "where it would go from there." (Doc. 115, at 17 ¶ 45). Plaintiffs also dispute defendant's characterization that Willier had indicated a March 2014 retirement date.[9] Plaintiffs contend that Willier "did not notify [defendant] of a plan to retire in March." (Doc. 115, at 18 ¶ 47).

---

[9] Defendant contends that Willier intended to retire at the end of summer 2014. Plaintiff, however, misconstrues defendant's statement by asserting that Willier did not notify defendant of an intent to retire in March, as opposed to at the end of the summer, as defendant contends. (Doc. 115, at 18, ¶ 47).

## 2.     *Robert Lauen*

Defendant answered Interrogatory No. 15 as follows:

**Bob Lauen**
a. At the time Mr. Lauen moved to the Des Moines area in the summer of 2013 [date that employee informed defendant of plan to retire in 2014].
b. Summer of 2014 [anticipated retirement date individual provided].
c. Jerry Currie, Mark Evers, Dean Peterson, and Dave Kratz. There likely were others who were informed as Mr. Lauen's retirement plans were known by many at Curries.
d. AADG 1278 [document evidencing individual's intent to retire] [In 2011, Mr. Lauen wrote that his 1-3 years career goals included: "Train a Replacement For My Job," and his 3+ years career goals included: "Not Appl[i]cable." (Doc. 110, at 19)]. This response may be supplemented when document review is complete.

(Doc. 110, at 14). It is undisputed that defendant hired Lauen's replacement, Pam Lathrop (age 55), in September 2013 so that he could train her before his retirement. (Doc. 105-2, at 128, 27-28 (deposition of David R. Kratz; Mr. Kratz testified that Mr. Lauen had told him that Mr. Lauen wanted to retire on his birthday, July 1, 2014); *see* Doc. 116, at 11 (citing Doc. 117, at 011 (Defendant's Answer to Interrogatory No. 10))). Mr. Lauen purchased a house in the Des Moines area in anticipation of his retirement and to be closer to his grandchildren. (Doc. 105-2, at 127, 20:5-13; *id.*, at 145, 25:21-25). Furthermore, defendant submits as undisputed that Bob Lauen came out financially ahead with his severance payments than if he had simply retired. Bob Lauen himself agreed with this statement. (Doc. 111-1, at 6; Doc. 105-2, at 103, 53:8-10). Defendant's expert calculated that Bob Lauen had gained $8,056 more through the RIF than if he had worked through June 2014. (Doc. 105-2, at 075).

Plaintiffs assert that Bob Lauen never provided either "a retirement date" or "any definitive retirement plan" to any of defendant's employees. (Doc. 115, at 16 ¶¶ 37, 39).

### D. *Employees fired due to combination of objective and subjective factors*

#### 1. *Dennis Behr*

According to defendant, plaintiff Dennis Behr's position as maintenance lead was eliminated due to redundancy in management. (Doc. 105-2, at 022 (defendant's amended answers to interrogatories—"Dennis Behr was selected to be part of the Reduction In Force . . . in an effort to reduce excess layers of management/supervision.")).[10] As the "maintenance "lead" Mr. Behr had to supervise and assign tasks to mechanics and electricians. (*Id.*, at 120, 55:4-8 (deposition of Ross Buchele)). After he was terminated, a production manager, Jay Hain, took over the duties of assigning work. (*Id.*, 56: 2-11 (no one was hired to replace Mr. Behr); *id.*, at 125, 66:3-24 (Jay Hain spent approximately one hour a day completing Mr. Behr's former supervisory tasks)).

#### 2. *Curtis Blaine Darnell*

According to defendant, plaintiff Curtis Darnell was terminated as "his customers could be most easily absorbed by others in the department without adversely affecting business because he worked with fewer customers." (*Id.*, at 023 (defendant's amended answers to interrogatories); *see* Dean Peterson's deposition, *id.*, at 110, 19:21-20:24 ("We were looking at individuals where costs that we could cut with being able to absorb the services they were providing, . . . [s]o we talked about project services . . . [a]nd I identified that I thought we could cut [project manager] [Curtis] Blaine [Darnell's] position, absorb his distributors back into our existing project services department in

---

[10] According to plaintiffs, Dennis Behr was terminated because he had spoken of retirement and someone thought he would retire. (Doc. 115, at 9 ¶ 25). Thus, in their resistance, plaintiffs contend that they can present direct evidence of age discrimination (namely that Behr was terminated due to his retirement plans). However, defendant filed a supplemental appendix including an affidavit of CEO/President Jerry Currie stating that he was mistaken in his deposition testimony as he had confused Dennis Behr for another employee, namely Thomas Dempsey. Jerry Currie testified that Dennis Behr's inclusion in the RIF was not due to retirement plans. (Doc. 134-1, at 1 ("I made an error in the deposition. Dennis Behr was not selected based on an intention to retire.")).

Mason City, and not adversely affect the incoming business.")). Plaintiffs contend that Peterson was not involved in the termination decision, thus his testimony is irrelevant. (Doc. 115, at 12 ¶ 28).

### 3. *Dale Glenn*

According to defendant, plaintiff Dale Glenn, a manufacturing engineer, was terminated due to his job being eliminated and his job performance. (Doc. 105-2, at 022 (defendant's amended answers to interrogatories)). Regarding the elimination of Glenn's job, Ross Buchele testified during his deposition that defendant thought it could "run with one manufacturing engineer" when it terminated Mr. Glenn. (*Id.*, at 64:16-19). Thus, when it terminated Mr. Glenn, no one "initially" replaced him. (*Id.*, 63:21). However, in the summer of 2014, defendant hired a junior-level engineer, Dustin Harris, a recent graduate of Iowa State, as "a lot of the task, lighter duties, were not getting done." (*Id.*, 64:3-19). Human Resources complaints had been lodged against Mr. Glenn regarding his interactions with past employees Jack Colby and "Denny" Behr; these complaints negatively affected Mr. Glenn's job performance review. *See* Manufacturing Engineer James C. Udelhofen's deposition, *id.*, at 132-134, 32:7-13, 36:15-38:25 (discussing Mr. Glenn's incident in 2012 with Denny Behr, in 2000 with Jack Colby, and an incident with Ross Buchele). On the other hand, according to plaintiffs, Glenn (age 51) was "terminated over a 46 year-old mechanical engineer with less seniority," and two months later, a recent college graduate was offered his job. (Doc. 115, at 11 ¶ 27 ("Buchele and Currie did not consult [Udelhofen and Gordon] in selecting Glenn for termination, nor did they consult Glenn's supervisor, Jay Hain.")). Dale Glenn was the older of the two Manufacturing Engineers. (Doc. 117, at 115).

### 4. *Michael Eppens*

According to defendant, plaintiff Michael Eppens was included in the involuntary RIF because "his supervisor felt that he was the weakest leader among the Area Managers

and did not treat employees well."[11] (Doc. 105-2, at 022 (defendant's amended answers to interrogatories)). *See* Production Manager Jay Hain's deposition, *id.*, at 124, 20:3-22:

> I told him Mike Eppens is probably one of my weakest supervisors that I have. . . . He had no people skills [meaning] when people ask for a day off and you don't get back to them. If somebody comes up to you and tells you, hey, I'm hurting, I'm sore, and you make light and fun of it.

Plaintiffs, on the other hand, contend that defendant had initially explained that it included Eppens in the reduction as his position was eliminated, yet plaintiffs assert "[i]n June 2017, more than three years after the RIF, [defendant] changed its reason for terminating Eppens to allege [weakest supervisor rationale instead of the prior rationale of position elimination]." (Doc. 116, at 15 ¶ 102).

## IV.    SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2016). A movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record[,]" *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted),

---

[11] Plaintiffs dispute this contention. Plaintiffs assert that: "Eppens was rated 'exceeds expectations' on every performance category in his most recent review. [(Doc. 117, at 039)]. His performance was equal to or better than his peers. . . . Hain was not consulted before Eppens was placed on the termination list, and Hain was not involved in the decision to terminate him." (Doc. 115, at 10 (citing *id.*, at 2-3, 9, 142, 145)).

or "when a reasonable jury could return a verdict for the nonmoving party on the question[,]" *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." (*Id.* at 248-49 (internal quotation marks and citation omitted)).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them.") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir.

2004) (citation omitted).  Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## V.    *LEGAL STANDARDS*

Plaintiffs are pursuing two theories of recovery, namely disparate treatment (discriminatory intent) and disparate impact (discriminatory result) claims, under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 to 634.  These claims are in the context of an involuntary reduction in force (RIF).

Section 623 of the ADEA reads, in pertinent part:

**(a) Employer practices**
It shall be unlawful for an employer—
(1) To fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1) (2015).  Section 626 governs an individual's right to proceed in a civil suit in the federal courts for a violation of ADEA.  First, an individual must file a charge alleging unlawful discrimination with the Equal Employment Opportunity Commission (EEOC) within specified time periods.  29 U.S.C. § 626(c)-(d).  An individual may file a civil action in the federal courts upon receipt of a notice by the EEOC.  29 U.S.C. § 626(e).  The ADEA only covers "individuals who are at least 40 years of age."  29 U.S.C. § 631(a).  Generally, it is "unlawful for an employer to take adverse action against an employee 'because of such individual's age.'"  *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 170 (2009) (quoting 29 U.S.C. § 623(a)).  Plaintiffs are alleging both disparate treatment and disparate impact claims.

The Court will turn first to the ADEA disparate impact claim.  In 2005, the United States Supreme Court resolved disagreement among the circuits and definitively held that

disparate impact claims are available under the ADEA. *See Smith v. City of Jackson, Miss.*, 544 U.S. 228, 240 (2005) ("We therefore conclude that it was error for the Court of Appeals to hold that the disparate-impact theory of liability is categorically unavailable under the ADEA."). In ADEA disparate impact claims, the burden shifts between employee and employer. First, the employee needs to make a prima facie showing that: (1) he is a member of the protected age group and (2) that the challenged employment practice had a significant disparate impact on that class. *Dist. Council 37, Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO v. N.Y. City Dep't of Parks & Recreation*, 113 F.3d 347, 351 (2d Cir. 1997) (note that the Second Circuit Court of Appeals followed the disparate impact theory prior to *Smith v. City of Jackson*). Employees may use statistical evidence to establish a disparate impact, if they also point to 'the specific employment practices that are allegedly responsible for any observed statistical disparities.'" *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008) (internal citations omitted).

If the employee makes a prima facie showing of his disparate impact claim, then the employer-defendant can respond by "invok[ing] one of the [ADEA's] express statutory affirmative defenses," or, in the alternative, the employer can "move to dismiss based on the failure of the plaintiff to satisfy one or more of the procedural and definitional facets of an ADEA case." 2 HOWARD C. EGLIT, AGE DISCRIMINATION § 7:94 The Age Discrimination in Employment Act—Litigation (2d ed. 2017). One affirmative defense relevant here is the RFOA (reasonable factors other than age) defense, under which the employer has both the burden of production and the burden of persuasion. *Meacham*, 554 U.S. at 91-93; *see* 29 U.S.C. § 623(f)(1) (RFOA provision, which reads: "It shall not be unlawful for an employer . . . to take any action otherwise prohibited under . . . this section . . . where the differentiation is based on reasonable factors other than age.").

Under an ADEA disparate treatment claim, there are two proverbial pathways plaintiff-employees can take. Either an employee can rely on *direct evidence* of age discrimination (i.e., a direct statement by the employer's decision-maker regarding employee's age) or an employee can use *circumstantial evidence*. The Eighth Circuit has explained direct evidence as "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (internal quotation marks and citations omitted) (in a Title VII context). The word "direct" in direct evidence refers to "causal strength of the proof, not whether it is circumstantial evidence." (*Id.*) (quotation marks omitted) (in Title VII context).

In the absence of such strong (direct) evidence of age discrimination, plaintiff-employees rely on circumstantial evidence. In such a circumstance, the three prong burden-shifting *McDonnell Douglas* analysis applies. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Recently, the Eighth Circuit Court of Appeals summarized the *McDonnell Douglas* analysis, as follows:

> [T]he plaintiff must first establish a four-part prima facie case of age discrimination. *See Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003). To establish a prima facie case of age discrimination in a reduction-in-force, **[A]** a plaintiff must show that (1) he is over 40 years old, (2) he met the applicable job qualifications, (3) he suffered an adverse employment action, and (4) there is some additional evidence that age was a factor in the employer's termination decision. *See Ward v. Int'l Paper Co.*, 509 F.3d 457, 460 (8th Cir. 2007). Once the plaintiff establishes a prima facie case, **[B]** the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* If the employer does so, **[C]** the plaintiff must show that the employer's proffered reason was pretext for discrimination. *Id.* At all times, the plaintiff retains the burden of persuasion to prove that age was the "but-for" cause of the termination. *See Gross v. FBL Fin. Servs., Inc.*, [557] U.S. at [176], 129 S. Ct. at 2350.

*Rahlf v. Mo-Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011) (**A-C** added to illustrate the three prongs).

## VI.  DISCUSSION

Plaintiffs assert two theories of recovery regarding the alleged age discrimination: disparate impact and disparate treatment.  The Court will address each in turn.

### A.  Disparate impact

The Court finds there is no genuine dispute of material facts on plaintiffs' disparate impact theory.  The Court finds plaintiffs' disparate impact claims fail on two grounds. The claims are procedurally defective, and alternatively, fail on the merits.  Therefore, the Court **grants** summary judgment in favor of defendant on the disparate impact claims.

#### 1.  Administrative Exhaustion

Defendant argues that neither plaintiff Dennis Behr nor plaintiff Glenn Willier filed a disparate impact claim with the Iowa Civil Rights Commission (ICRC).  Defendant admits that plaintiffs filed a disparate treatment claim; however, defendant contends that disparate impact and disparate treatment represent two separate theories of recovery and that each must be alleged with the applicable administrative agency.  On the other hand, plaintiffs contend that they did administratively exhaust their disparate impact claim. Plaintiffs contend that there are no special keywords or legalese that plaintiffs Dennis Behr or Glenn Willier must have written in their filings to place the ICRC on notice of plaintiffs' disparate impact claims.  Plaintiffs also contend that courts should be cognizant of the information disparity that employees have in the initial stages of such age discrimination proceedings.  Thus, courts should liberally construe a plaintiff's agency complaint.  Both parties agree on the law.  Both parties cite case law that the complaint must have placed the agency on notice of the disparate impact claims so it could investigate those claims.  (Doc. 105-3, at 7 (defendant) and Doc. 113-1, at 38 (plaintiffs)).

17

Under the ADEA, employee-plaintiffs must first file a charge with the appropriate administrative agency (here ICRC). *Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 825 (8th Cir. 2009). The timing of plaintiffs' filings with the ICRC is not in dispute here. Rather, the parties dispute whether plaintiffs' filings gave notice to the ICRC of the alleged disparate impact claim. *See Brown v. Ameriprise Fin. Servs., Inc.*, 707 F. Supp.2d 971, 975 (D. Minn. 2010) ("Because the agency cannot investigate a claim about which it has not been notified, an administratively unalleged claim will be deemed unexhausted, meaning it cannot be asserted in a subsequent lawsuit.").

Despite adopting the appropriate liberal standard for reading such complaints, the Court cannot find that plaintiffs gave the ICRC any notice of a disparate impact theory. Plaintiffs' allegations fail to notify the ICRC that a neutral policy was responsible for the alleged age discrimination. Plaintiffs' original complaints explicitly allege intentional discrimination based on age, not the adoption of a policy that had an unintended discriminatory impact based on age. Approximately one week after Glenn Willier filed his original complaint with the ICRC, he filed a questionnaire. In this questionnaire, Glenn Willier wrote that "[Defendant] retained numerous younger employees with less experience or seniority while terminating me and other older workers." (Doc. 105-2, at 048). Dennis Behr's amended complaint included the following statement of "I believe the company also discriminated against others who are similarly situated to me on the basis of age." (Doc. 105-2, at 54). Plaintiffs' assertion that defendant similarly discriminated against other employees based on age does not transform their allegations into ones alleging disparate impact. Plaintiffs did not reference any corporate age-neutral policy that had a disparate impact based on age.

This case is similar to the facts in *Brown v. Ameriprise Financial Services, Inc.*, in the District of Minnesota, where the court held that plaintiff failed to administratively exhaust her disparate impact claim as "she failed to indicate (or even suggest) that such

[racial] discrimination was caused by a neutral Ameriprise policy—in fact, the charge made no mention of any face-neutral policy at all." *Brown,* 707 F. Supp.2d 971, 976 (D. Minn. 2010). There, the court reasoned that courts require that a neutral employment practice be described or at least identified; otherwise, the exhaustion principle would be undermined if all intentional discrimination claims would be "read to imply unintentional discrimination, and all claims of disparate treatment would exhaust claims of disparate impact." (*Id.* at 976-77). The Court agrees. Plaintiffs did not describe or even identify a facially-neutral policy employed by defendant that resulted in the alleged age discrimination. Therefore, plaintiffs failed to exhaust their theory of disparate impact.

### 2.    *Prima facie showing of disparate impact*

In the alternative, for the sake of analysis, the Court finds that plaintiffs' disparate impact theory fails to make a prima facie showing. For plaintiffs to establish a prima facie case of disparate impact, they must show "(1) an identifiable, facially-neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two. *Mems v. City of St. Paul*, 224 F.3d 735, 740 (8th Cir. 2000) (internal citation omitted). Typically, facially-neutral policies/practices include *inter alia*: written examinations, requirement of diploma, height and weight requirements, verbal skills tests, etc. *See Dothard v. Rawlinson*, 433 U.S. 321 (1977) (holding that height and weight requirements were facially neutral); *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971) (finding that the use of diploma and intelligence testing was facially neutral under the circumstances). Other criteria may also establish a facially-neutral policy as well. *See E.E.O.C. v. Allstate Ins. Co.*, 458 F. Supp.2d 980, 983 (E.D. Mo. 2006) (finding that the facially-neutral policy was defendant's rehire policy described as "former employee-agents, who were subject to the Reorganization Plan, would be ineligible for rehire for a period of one year after their termination, or after all payments of any severance benefits had been received."). The requirement for the employee to

identify the specific employment practice challenged is not "a trivial burden." *Meacham*, 554 U.S. at 101 (holding that employee may not merely identify vague unfairness to one group, but rather needs to identify "any specific test, requirement, or practice within the [challenged] plan that had an adverse impact on older workers") (quoting *Smith*, 544 U.S., at 241)). As the United States Supreme Court wrote in *Smith*:

> Rather, the employee is "'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" [*Wards Cove Packing Co., Inc., v. Antonio*,] 490 U.S. at 656, 109 S. Ct. 2115 (quoting *Watson*, 487 U.S. at 994, 108 S. Ct. 2777; emphasis added). Petitioners have failed to do so. Their failure to identify the specific practice being challenged is the sort of omission that could "result in employers being potentially liable for 'the myriad of innocent causes that may lead to statistical imbalances . . . .'" 490 U.S., at 657, 109 S. Ct. 2115.

*Smith*, 544 U.S. at 241.

Defendant contends that plaintiffs have failed all three steps of a prima facie showing of disparate impact—plaintiffs failed to identify a facially-neutral policy/practice, plaintiffs failed to show that the facially-neutral policy had a statistically significant impact on the protected class, and plaintiffs failed to establish a causal connection. Plaintiffs disagree and obviously contend otherwise.

The Court finds that plaintiffs failed to make a prima facie showing of disparate impact because they have not identified a facially-neutral policy or practice. Rather, plaintiffs point in general to the RIF as the facially-neutral policy or practice. At oral argument, plaintiffs reiterated and clarified their disparate impact argument. According to plaintiffs, the RIF was the policy at issue and the decision-makers relied upon only subjective criteria: "what jobs can we simply do without." Plaintiffs point out that subjective criteria may be analyzed under the disparate impact approach, citing *Watson v. Fort Worth Bank and Tr.*, 487 U.S. 977, 992 (1988) (in context of Title VII, holding

that subjective employment practices or policies may be analyzed under a disparate impact theory). Alternatively, plaintiffs argue that even if the Court finds no subjective criteria was used by Mr. Buchele and Mr. Currie, then as a policy matter the absence of criteria should not prohibit an employee from recovery under a disparate impact theory.

In *Watson*, a bank left the decision to promote employees to the subjective discretion of lower-level supervisors without any apparent criteria, and that practice allegedly led to a discriminatory practice of not promoting African-Americans. The instant case, in contrast, did not involve a routine practice in which discretion was given to lower-level supervisors to determine which employees should be eliminated whenever the company engaged in a RIF. Rather, the CEO/President and the Director of Operations—members of the highest level of management—chose the initial pool from which to select the employees for the RIF. There is no indication that the procedures followed were utilized in any situations other than the RIF at issue.

Even under *Watson*, the plaintiffs' "burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged." *Watson*, 487 U.S. at 994. In *Watson*, that practice was allowing supervisors complete discretion to make promotion decisions. Here, plaintiffs fail to identify a facially-neutral business policy or practice where the subjective criteria used is the determination of "what jobs can we simply do without." A single RIF is simply not a policy or practice; it is a single occurrence where a plant has cut its workforce. In any reduction in force, an employer will naturally seek to eliminate jobs in a manner that has the least negative impact on operations. A plaintiff might be able to make a prima facie age discrimination case in relation to a RIF if, for example, the plaintiff showed that the employer engaged in a number of RIFs over a period of time, each time leaving to

supervisors complete discretion to determine which employees to eliminate, and showing that the practice resulted in older employees being let go each time.

Plaintiffs' inability to isolate and identify a specific employment practice that is responsible for the alleged statistical disparity in the age of the employees terminated is fatal to plaintiffs' disparate impact claim. *See Smith*, 544 U.S. at 241 (in the context of asserting that a law enforcement pay plan discriminated against older workers, the Court found that petitioners failed to point to a facially-neutral policy; thus, their disparate impact claim failed). Given that the Court has found that plaintiffs' failure to identify a policy or practice defeats any notion of a prima facie case of disparate impact, the Court need not determine whether there was a disparate effect on members of the protected class or whether there was a causal connection between the two. Nor is it necessary for the Court to determine the merits of defendant's RFOA defense to rebut a prima facie showing.

### B.    *Disparate treatment*

Plaintiffs assert a disparate treatment theory of age discrimination. In disparate treatment claims, plaintiff-employees must present evidence—either direct evidence or circumstantial evidence—of age discrimination. Given the sophistication of today's society, direct evidence of age discrimination is rare. Generally, ADEA lawsuits are based on circumstantial evidence. If circumstantial evidence is used then the *McDonnell Douglas* test applies. Under the *McDonnell Douglas* test, a plaintiff must first make a prima facie showing of age discrimination. The burden then shifts to the defendant to present a legitimate, non-discriminatory reason for its action. The burden then shifts back to the plaintiff to show that the employer's legitimate reason is mere pretext. To prove pretext, a plaintiff may show either that defendant's reasoning has no basis in fact or that the prohibited reason, namely age discrimination, more likely motivated defendant. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 520-21 (8th Cir. 2010).

Under the *McDonnell Douglas* test, plaintiffs always retain the burden of persuasion that age was the "but-for" cause of the adverse employment action.

For purposes of the summary judgment motions, those plaintiffs who were terminated based on defendant's belief that they intended to retire within the next year must be analyzed separately from the remaining plaintiffs who were terminated for other reasons. The former are the subject of cross-motions for summary judgment, while the latter are the subject only of defendant's motion for summary judgment. The Court will first analyze the motions regarding plaintiffs terminated on the basis that defendant believed they intended to retire. Then the Court will turn to analyzing the remaining plaintiffs.

### 1.    Intent to Retire

It is undisputed that defendant terminated plaintiffs Bob Lauen and Glenn Willier due to defendant's belief that these two plaintiffs, along with four other employees, had communicated to defendant an intent to retire in 2014. (Doc. 105-2, at 080 (Vicki Gordan's Affidavit)). Plaintiffs dispute that Bob Lauen and Glenn Willier actually remained steadfast in their intention to retire in 2014, that discussions of part-time and remote work were underway, and that the part-time and remote ideas were ultimately rejected by defendant. Furthermore, plaintiffs contend that Bob Lauen and Glenn Willier never gave defendant a specific retirement date (i.e., which day of the month).

### a.    Plaintiffs' partial summary judgment motion

Plaintiffs move for summary judgment under the disparate treatment theory for plaintiffs Glenn Willier and Bob Lauen. There is no factual dispute regarding defendant's reasoning given for including Willier (age 64) and Lauen (age 64) in the RIF. Namely, defendant believed both named-plaintiffs had respectively expressed an intent to retire in 2014. Plaintiffs do not dispute that this was defendant's reason for terminating these employees, although they do dispute whether the employees actually intended to retire.

23

Rather, plaintiffs argue that defendant violated the ADEA as a matter of law because "an 'intent to retire' cannot be 'divorced' from age, [therefore, defendant's] decision to terminate employees based on an alleged intent to retire equates to termination because of age." (Doc. 106-1, at 2). Essentially, plaintiffs assert that terminating employees based on the employee's intention to retire constitutes per se age discrimination. Defendant contends that plaintiffs' argument is legally unsound because an employee's intent to retire is not inexorably tied to the employee's age.

Plaintiffs argue that the age proxy doctrine applies when age-correlated factors are "simply [ ] mask[s] for or a means of disguising the employer's discriminatory animus and motive." (Doc. 106-1, at 6) (quoting Toni J. Querry, Note, *A Rose By Any Other Name No Longer Smells As Sweet: Disparate Treatment Discrimination and the Age Proxy Doctrine After* Hazen Paper Co. v. Briggs, 81 CORNELL L. REV., 530, 539-40 (1996)). Plaintiffs cite *Hilde v. City of Eveleth*, 777 F.3d 998, 1006 (8th Cir. 2015), for the proposition that if employment decisions are motivated by age-correlated factors (i.e., retirement eligibility, seniority, etc.) then such decisions constitute age discrimination. Plaintiffs also cite *E.E.O.C. v. Community Unit School District No. 9, Madison County, Illinois*, 642 F. Supp. 902, 905 (S.D. Ill. 1986), for the proposition that an adverse discriminatory employment decision based on employee's intent to retire was "so inexorably linked with age" that it violated the ADEA. In that case, the court found that demoting two school administrators to teaching jobs based on these administrators' intentions to retire was age discrimination. Finally, plaintiffs rely on *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993), for the proposition that an employment decision must be "wholly motivated by factors other than age."

The Court finds *Hilde* easily distinguishable. In *Hilde*, the defendant based its promotion decision on retirement eligibility, which was predicated on an employee turning 50 years of age. Thus, the criteria for termination was inexorably tied to age.

Here, defendant based its decision not on retirement eligibility, but rather on intent to retire. Although there may be a correlation between an employee's age and an employee expressing an intent to retire, they are not identical. An employee's intent to retire is not inexorably linked to an employee's age as is retirement eligibility. Theoretically, an employee could retire at 35 or 39 years of age (before being a protected member under the ADEA). Thus, it is analytically possible for an intent to retire to be separate from age, however correlated in fact they may be. *Hazen Paper Co.*, 507 U.S. at 611. Furthermore, unlike in *Hilde* and *Hazen Paper Co.*, the evidence favoring Lauen's and Willier's intents to retire is not limited to their ages. Namely, both plaintiffs personally informed their employer of their intentions to retire in 2014, which was reflected in the record before the Court.

Defendant distinguishes *Community Unit School District No. 9, Madison County, Illinois*, by alleging that it has been indirectly overruled by a later case in its circuit, namely *Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931 (7th Cir. 2003). In *Leibforth*, a bank employer believed that its employee would imminently retire and move out of state to Arizona as soon as she sold her house. (*Id.* at 932). The bank fired her as it "did not want to keep her on for an indefinite period of time, knowing that she would immediately leave upon the sale of her house." (*Id.* at 934). In the context of employee's age discrimination discharge claim, the Seventh Circuit upheld summary judgment for the bank as, under the *McDonnell Douglas* analysis, the employee failed to show that the bank's legitimate business reason (it honestly believed she would imminently retire and, thus, it did not want to keep paying her) was pretext. The Court finds *Leibforth* persuasive and is further persuaded that firing an employee based on a perceived intention to retire does not constitute age discrimination per se.

Thus, the Court rejects plaintiffs' position that the decision to fire an employee based on an expressed desire to retire soon constitutes age discrimination as a matter of law.

### b. *Defendant's summary judgment motion regarding those employees terminated because they expressed an intent to retire*

Defendant moves for summary judgment as to the employees it terminated based on an expressed intent to retire, arguing that intent to retire was a legitimate reason not directly related to an employee's age. For purposes of the summary judgment motion, defendant concedes that plaintiffs can make a prima facie showing of age discrimination for plaintiffs Bob Lauen and Glenn Willier, but argue that plaintiffs cannot show that defendant's legitimate business reasons were pretextual. Defendant asserts that its legitimate business reason for including Bob Lauen and Glenn Willier in the RIF was to salvage the jobs of others employees (younger or older) who wished to remain employed with the company long term. Defendant contends that it knew that Bob Lauen and Glenn Willier would be leaving shortly. The Court finds this explanation of wanting to salvage the jobs of other employees and rid itself of those employees with plans to remain only temporarily a legitimate, non-discriminatory business reason. *See Lee v. Rheem Mfg. Co.*, 432 F.3d 849, 854 (8th Cir. 2005) ("Keeping in mind that 'courts do not review the wisdom or fairness of employers' business judgments, other than to determine whether they involve intentional unlawful discrimination, . . . .'") (quoting *Peterson v. Scott Cty.*, 406 F.3d 515, 523 (8th Cir. 2005)).

The fact that plaintiffs Glenn Willier and Bob Lauen now claim they did not have a firm intention to retire in 2014 is immaterial. Plaintiffs argue that defendant was wrong in believing they intended to retire in 2014, but do not dispute that defendant believed these two plaintiffs intended to retire in 2014. Even if defendant misunderstood these employees' intentions, terminating them over other employees who had not expressed

such an intent was a legitimate business reason, not inexorably related to the employees' ages.

Thus, the burden shifts to plaintiffs to show evidence of pretext. Plaintiffs do not allege the stated reason was pretextual. Indeed, plaintiffs embrace this given reason, relying on their belief that intent to retire is inexorably linked to age. The Court has found it is not. Having failed to come forward with any evidence that the stated reason was pretextual, the Court finds plaintiffs have failed to produce evidence from which a reasonable jury could find defendant discriminated against Lauen and Willier based on age by selecting them for the RIF when defendant believed they intended to retire within the year.

Therefore, the Court grants defendant's motion for summary judgement as to plaintiffs Lauen and Willier.

### 2.    *Other Employees*

The Court finds that summary judgment is inappropriate with regard to the four remaining plaintiffs because there are genuine issues of material fact in dispute. Again, there is only circumstantial evidence presented, so the *McDonnell Douglas* analysis applies. For purposes of the summary judgment motion, defendant assumed that the four remaining plaintiffs established a prima facie showing of age discrimination. Defendant argues that summary judgment is appropriate, however, because it has articulated non-discriminatory reasons for these plaintiffs' terminations. The Court finds that for each of the remaining four plaintiffs there is a factual dispute as to whether age was the reason for each termination.

Defendant states that it selected Behr and Darnell for termination because it believed it could continue to cover the areas at issue without them. Behr was deemed an excess level of management. Darnell's customers were easily absorbable by others. Defendant selected Dale Glenn for termination because it believed it could get by without

his position and because he had difficulty getting along with others and getting work done. Finally, defendant selected Eppens for the RIF because it had concerns about his performance, and because his supervisor believed Eppens was the weakest leader and did not treat employees well. If true, all of these are non-discriminatory reasons for terminating these employees.

What precludes summary judgment, however, is that plaintiffs dispute these stated reasons and have proffered evidence that raises genuine issues of material fact as to whether defendant terminated these employees for the stated reasons, or whether the stated reasons were mere pretext for terminating the employees because of their ages. Plaintiffs assert that Behr was not in management. Plaintiffs proffer evidence that Darnell's job was not eliminated, but, rather, his duties were reassigned to a younger employee, and that defendant has changed its explanation for terminating Darnell. Glenn, plaintiffs argue, was replaced by a younger new hire. Defendant disputes this, of course, and proffers evidence suggesting that the decision to hire the younger person was independent of the decision to terminate Glenn. This, however, is a genuine issue of material fact rendering summary judgment inappropriate. Finally, plaintiffs argue that Eppens' position was not terminated; rather, it was filled by another younger employee. Plaintiffs also argue that defendant has changed its explanation for terminating Eppens.

Moreover, plaintiffs have proffered other evidence, which, taken together with the factual disputes about the reasons proffered by defendant, create genuine issues of fact for a jury to determine whether defendant chose these employees for termination because of their ages. Plaintiffs point out that, for example, defendant did not follow its own RIF policies (at least with respect to non-management employees). Plaintiffs have adduced at least some evidence that defendant did not consider seniority, nor did defendant allow terminated employees to be eligible for rehire. Plaintiffs have also raised a factual question about whether the lack of documentation regarding who to consider in the

reduction in force (the decision-makers only had a list of employee names, job titles, and ages) suggests that age was a primary factor in determining who to terminate in the RIF. Finally, plaintiffs assert the evidence shows that the terminated employees were, in almost every case, the oldest employee within the department. Defendant, again, disputes these facts, and has submitted its own list of employees within various departments showing a different picture. Yet, there is a factual dispute about which employee worked in which department. Therefore, even determining whether there is an age-related pattern of termination in each department is a matter of factual dispute.

In short, genuine issues of material fact permeate plaintiffs' disparate treatment claims such that summary judgment is not appropriate for the four remaining plaintiffs. These are issues for a jury to ultimately determine.

## VII. CONCLUSION

For the reasons set forth above, the Court **grants in part and denies in part** defendant's Motion for Summary Judgment (Doc. 105). The Court **grants** defendant's motion for summary judgment with respect to plaintiffs' disparate impact theory and **grants** defendant's motion for summary judgment with respect to plaintiffs Robert Lauen and Glenn Willier's disparate treatment claims, and **denies** defendant's motion with regard to all other plaintiffs' disparate treatment claims. The Court also **denies** plaintiffs' Second Motion for Partial Summary Judgment. (Doc. 106).

**IT IS SO ORDERED** this 30th day of August, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa

29